IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| TINA TAYLOR, ON BEHALF OF T.J., A MINOR, <br><br>      Plaintiff, <br><br> vs. <br><br> CENTER INDEPENDENT SCHOOL DISTRICT; AMANDA CLARK, IN HER OFFICIAL CAPACITY AS PRINCIPAL OF CENTER HIGH SCHOOL AND IN HER PERSONAL CAPACITY; JILL COX, IN HER OFFICIAL CAPACITY AS ASSOCIATE PRINCIPAL OF CENTER HIGH SCHOOL AND IN HER PERSONAL CAPACITY; GAYLA MILLER, IN HER OFFICIAL CAPACITY AS ASSOCIATE PRINCIPAL OF CENTER HIGH SCHOOL AND IN HER PERSONAL CAPACITY; AND PETE LOW IN HIS OFFICIAL CAPCITY AS AN OFFICER WITH CENTER ISD AND IN HIS PERSONAL CAPACITY, <br><br>      Defendants. | NO. 9:23-CV-00152-MJT |

**<u>REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTIONS TO DISMISS</u>**

This case is assigned to the Honorable Michael J. Truncale, United States District Judge.

On May 30, 2024, Judge Truncale referred three motions to dismiss to the undersigned United States Magistrate Judge for consideration and disposition:

(1) Defendant Center Independent School District ("CISD")'s *Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. No. 18);

(2) Defendants Jill Cox, Pete Low, and Gayla Miller's *Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. No. 19); and

(3) Defendant Amanda Clark's *Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. No. 20).

Plaintiff Tina Taylor filed this lawsuit on behalf of T.J., her minor son, against CISD and several Center High School ("CHS") administrators.  Taylor's claims arise from T.J.'s placement in a Disciplinary Alternative Education Program ("DAEP") by CHS administrators following an alleged assault that T.J. committed against a fellow student.  Taylor asserts procedural and substantive due process claims under the U.S. Constitution and Texas Constitution against Principal Amanda Clark, Assistant Principals Jill Cox and Gayla Miller, and CISD Chief of Police Pete Low (collectively, "the individual defendants").  Taylor also alleges a *Monell* municipal liability claim under 42 U.S.C. § 1983 against CISD.

After careful review of the filings and applicable law, the undersigned recommends granting all three motions to dismiss.  First, Defendants CISD and Low are entitled to governmental immunity from Taylor's state law claims.  Second, the individual defendants are all entitled to qualified immunity.  Third, Taylor fails to allege sufficient facts showing that the individual defendants violated T.J.'s constitutional rights.  Finally, because Taylor fails to allege a violation of T.J.'s constitutional rights, she fails to state a *Monell* claim against CISD.

## I.    **Factual Background**

Taylor brings claims on behalf of T.J., her minor son, who is a current student at CHS in Center, Texas.  Doc. No. 13 at 2, ⁋ 2.  T.J. was a freshman student at the time of the underlying incident.  *Id.* at 3, ⁋ 9.  Taylor's claims against the individual defendants and CISD arise from disciplinary measures the individual defendants took against T.J. for an alleged assault that T.J. committed against a female student at CHS.  *Id.*, ⁋ 12.

The parties strongly dispute whether T.J.'s actions constituted an "assault" under the Texas Penal Code.  According to the facts alleged in Taylor's *Complaint*, the alleged assault involved T.J. lightly touching his friend's leg below the knee in a friendly, innocuous manner.  *Id.* at 4, ⁋ 15.  Taylor further contends that the incident occurred while T.J. and the girl were talking in the school

gym where dozens of other students were present, and that no person could reasonably perceive the touch as an assault under Texas law.  *Id.*  On the other hand, the individual defendants contend that T.J.'s offense warranted DAEP placement because "slapping a female student's inner thigh" constitutes an assault under § 22.01(a) of the Texas Penal Code.  *Id.*, ⁋⁋ 12, 24.  Taylor maintains the individual defendants' contentions are not true.  *Id.*, ⁋ 24.

On August 27, 2021, the individual defendants suspended T.J. from school for three days as discipline for the alleged assault.  *Id.* at 3, ⁋ 9.  A few days later, on September 1, 2021, all four individual defendants met with Taylor and T.J.  *Id.*, ⁋ 11.  During the meeting, the individual defendants told Taylor and T.J. that T.J. was being ordered to a disciplinary alternative education program (DAEP) for a period of 60 days without possibility of early release.  *Id.*, ⁋ 12.  The individual defendants stated that the type of assault that T.J. allegedly committed required mandatory DAEP placement.  *Id.*, ⁋ 13.  The individual defendants told Taylor that they based their decision on witness statements and a video of the incident.  *Id.*, ⁋ 16.

Taylor alleges that the individual defendants deprived her and T.J. of fair process and a meaningful opportunity to respond to the allegations lodged against T.J. during the meeting.  *Id.*, ⁋⁋ 15–18.  Specifically, Taylor contends that she was not allowed to view the witness statements or video of the incident and could not question any witnesses.  *Id.*, ⁋ 16.  Additionally, the individual defendants refused to provide a verbal explanation or description of the alleged assault.  *Id.*, ⁋ 17.  Following this meeting, T.J. was removed from campus and placed in DAEP.  *Id.*, ⁋ 19.  The individual defendants subsequently forwarded criminal assault charges against T.J. to the municipal court.  *Id.*  As a result of the DAEP placement, T.J. was unable to participate in the CHS football team, of which he had been an active member.  *Id.*

On September 20, 2021, Taylor met with Defendant Clark. *Id.* at 5, ⁋ 20. At this meeting, Taylor asked to view T.J.'s full investigation file, including the witness statements and video of the incident. *Id.* Clark refused to show Taylor the file. *Id.* Clark also refused to change both T.J.'s DAEP placement and the information regarding the assault in his disciplinary file. *Id.*

Thereafter, on September 30, 2021, Taylor filed a Level One administrative complaint with CHS, requesting T.J.'s immediate release from DAEP and a correction of T.J.'s disciplinary file to remove the assault charge. *Id.*, ⁋ 21. On October 4, 2021, Clark again met with Taylor, this time to discuss the Level One complaint. *Id.*, ⁋ 22. Two weeks later, on October 19, 2021, Clark issued a decision on Taylor's Level One complaint ("the Level One Decision"), in which she refused to provide Taylor with access to the witness statements or video, release T.J. from DAEP, or remove the assault finding from T.J.'s disciplinary record. *Id.* Taylor contends that the Level One Decision, which was issued six weeks after T.J.'s placement in DAEP, was the first time that the individual defendants provided any substantive description of the assault allegation against T.J. *Id.*, ⁋ 24.

The Level One Decision states that T.J. committed an assault under Texas Penal Code §§ 22.01(a)(2) or (3). *Id.* at 6, ⁋ 26. Taylor maintains that this classification of the assault indicates the individual defendants' changing rationale for T.J.'s DAEP placement. *Id.* At first, during the initial meeting, the individual defendants told Taylor that the assault T.J. committed required *mandatory* DAEP placement. *Id.* at 3, ⁋ 13. However, Taylor alleges that the type of assault described in the Level One Decision allows for *discretionary*, not mandatory, DAEP placement. *Id.* at 6, ⁋ 26.

Additionally, Taylor alleges that the municipal court reviewed the charges against T.J. and placed him on deferred adjudication, such that the charges would be dismissed after six months of

good behavior.  *Id.* at 5, ⁋ 20.  Taylor alleges that because the court refused to prosecute the assault charges, CHS is required to provide a formal review of T.J.'s DAEP placement.  *Id.* at 6, ⁋ 26. Defendant Clark's Level One Decision disclaims CHS's obligation to review the DAEP placement. *Id.*, ⁋ 27.  Nonetheless, Clark conducted an independent review of the charge against T.J. anyway and concluded that T.J.'s placement in DAEP was proper because he had committed an assault in violation of § 22.01(a)(3).  *Id.*

Taylor also contends that the Level One Decision contains a false representation of T.J.'s statement about the alleged assault.  *Id.* at 7, ⁋ 29.  According to Taylor, the Level One Decision states that T.J. admitted to slapping a female student's inner thigh.  *Id.*  However, Taylor contends that T.J.'s actual statement was "I slapped [the female student's] leg as a joke I didn't know she was going to take it that way."  *Id.*  Taylor maintains that T.J. never admitted to specifically touching the student's inner thigh.  *Id.*

Finally, Taylor contends that while CHS turned over ten witness statements with the Level 1 Decision, the school interviewed eighteen students in its investigation of the incident.  *Id.*, ⁋ 30. The school has provided no information about the missing eight statements.  *Id.*

## II.    <u>Procedural History</u>

Taylor filed her *First Amended Complaint* (Doc. No. 13) on December 12, 2023. Thereafter, on January 22, 2024, Defendants CISD and Cox, Miller, and Low filed their *Motions to Dismiss*.  Doc. Nos. 18, 19.  On January 23, 2024, Defendant Clark filed her *Motion to Dismiss*. Doc. No. 20.  Taylor filed her *Response* (Doc. No. 23) on February 6, 2024, and the Defendants filed their *Replies* (Doc. Nos. 24, 25) on February 13, 2024.

### III.    Legal Standards

#### A.  Rule 12(b)(1) Motion to Dismiss

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject-matter jurisdiction of a federal district court.  *See* FED R. CIV. P. 12(b)(1). The court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Walmart, Inc. v. U.S. Department of Justice*, 21 F.4th 300, 307 (5th Cir. 2021) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  A court must address a jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6).  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

When ruling on a 12(b)(1) motion, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020).  "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief." *Ramming*, 281 F.3d at 161.

#### B.  Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiffs must state enough facts to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  When assessing a motion to dismiss under this rule, the court must accept as true all well-pleaded facts in the plaintiffs' complaint and view those facts in the light most favorable to the plaintiffs. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023).  However, "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Id.* (internal quotations omitted).

## IV.  **Defendant CISD's 12(b)(1) Motion to Dismiss**

Defendant CISD seeks dismissal of Taylor's state law tort claims under FED. R. CIV. P. 12(b)(1).  Doc. No. 18 at 11.  Taylor's *First Amended Complaint* vaguely asserts procedural and substantive due process claims under Article 1, § 19 of the Texas Constitution.  Doc. No. 13 at 7–10.  Taylor expressly disclaims any state law claims against Defendants Clark, Miller, and Cox. *Id.* at 9, ¶¶ 41, 44.  Thus, the undersigned finds that Taylor alleges state law claims against only Defendants CISD and Low.  First, CISD contends that Taylor's state law claims against Defendant Low must be dismissed under the Texas Tort Claims Act ("TTCA")'s election of remedies provision.  Doc. No. 18 at 13.  Second, CISD contends that Taylor's state law claims against CISD and Defendant Low are barred under the doctrine of governmental immunity.  *Id.*  The undersigned will consider the issue of governmental immunity first.

### A.  **Taylor's State Law Claims Against CISD and Defendant Low in his Official Capacity**

Under Texas law, sovereign immunity protects the State from lawsuits and liability for monetary damages. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369–70 (Tex. 2009).  The state's

political subdivisions, which include public school districts, are generally entitled to governmental immunity from liability and suit.  *El Paso Educ. Initiative, Inc. v. Amex Properties, LLC*, 602 S.W.3d 521, 526 (Tex. 2020).  Both doctrines derive from the long-standing principle that "no State can be sued in her own courts without her consent, and then only in the manner indicated by that consent."  *Id.* at 655 (quoting *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)).

The Texas Tort Claims Act ("TTCA") provides a limited waiver of immunity for certain suits against governmental entities.  "As it relates to school districts, the TTCA's waiver provision is particularly limited: a school district's waiver of governmental immunity encompasses only tort claims involving the use or operation of motor vehicles."  *Farshid on behalf of E.K. v. Allen Indep. Sch. Dist. through Bd. of Trustees*, 688 F. Supp. 3d 391, 398 (E.D. Tex. 2023), *aff'd*, No. 23-40532, 2024 WL 3082335 (5th Cir. June 21, 2024).  None of Taylor's claims against CISD involve the use or operation of motor vehicles.  Thus, CISD retains its governmental immunity.  Accordingly, to the extent Taylor alleges any state law claims against CISD, all such claims must be dismissed.

Additionally, Taylor's state law claims asserted against Defendant Low in his official capacity must also be dismissed because "an employee sued in his official capacity has the same governmental immunity, derivatively, as his governmental employer."  *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011).

### B.  Taylor's State Law Claims Against Defendant Low in his Individual Capacity

CISD contends that the election of remedies provision under the TTCA provides an additional basis for the dismissal of Taylor's claims against Low.  Doc. No. 18 at 13.  The undersigned agrees.  The election of remedies provision states that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee

of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a). This provision "forces a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019). If a plaintiff declines to make this election and sues both a governmental unit and its employees, "the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e); *see also Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 532 (Tex. 2017). Taylor has not made a clear election between CISD and Low in her *First Amended Complaint* (Doc. No. 13). Accordingly, any state law claims Taylor asserts against Defendant Low in his individual capacity should be dismissed pursuant to § 101.106(e).

In sum, CISD's 12(b)(1) motion should be granted. Accordingly, Taylor's state law claims against CISD and against Defendant Low in both his official and individual capacities should be dismissed.

## V.    Individual Defendants' 12(b)(6) Motions to Dismiss

The individual defendants' instant motions seek dismissal of Taylor's procedural and substantive due process and Fourth Amendment claims under the U.S. Constitution asserted against them in both their official and individual capacities. Doc. No. 19 at 6–7; Doc. No. 20 at 1. Because the arguments raised in each motion are nearly identical, the undersigned will analyze the motions together.

### A.  Redundancy of Taylor's Claims Against the Individual Defendants in their Official Capacities

The individual defendants contend that Taylor's claims asserted against them in their official capacities should be dismissed because they are redundant of her claims against CISD.

Doc. No. 20 at 8–9; Doc. No. 19 at 11.  The undersigned agrees.  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) (internal quotations omitted).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166.  "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original).

Defendants Clark, Cox, Miller, and Low are all officials employed by CISD, which is a co-defendant in this lawsuit.  Thus, Taylor's claims against them in their official capacities are redundant of her claims against CISD and should be dismissed.  *See*, *e.g.*, *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 F. App'x 958, 963 (5th Cir. 2020) (dismissing claims brought against school principal in her official capacity because such claims were redundant of claims brought against the school district itself); *Roman v. Whitmire*, No. 94-20676, 1995 WL 449639, at *1 n.3 (5th Cir. 1995) (noting that claims brought against school principal and teacher in their official capacities are "properly treated" as claims against the school district); *Wright v. Denison Indep. Sch. Dist.*, No. 4:16-CV-615-KPJ, 2018 WL 3970477, at *7 (E.D. Tex. Aug. 20, 2018), *amended*, No. 4:16-CV-615-KPJ, 2018 WL 4929285 (E.D. Tex. Oct. 11, 2018) (dismissing claims against baseball coach, athletic director, and superintendent sued in their official capacities as redundant because the real party in interest was the school district).

Accordingly, all of Taylor's official capacity claims against the individual defendants should be dismissed.

### B.  Qualified Immunity of Individual Defendants

Taylor alleges procedural and substantive due process claims under 42 U.S.C. § 1983 against the individual defendants.  Doc. No. 13 at 7–10.  The individual defendants contend that they are entitled to qualified immunity for all of Taylor's claims asserted against them in their individual capacities.  Doc. No. 19 at 12; Doc. No. 20 at 13.  The undersigned agrees.

Qualified immunity "shields public officials sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bevill v. Wheeler*, 103 F.4th 363, 371 (5th Cir. 2024) (internal quotations omitted).  Qualified immunity provides "an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  When a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to show two elements: "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)).  A court can analyze either element first.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  The undersigned begins with the clearly established element.

### 1.  Clearly Established Right

A defendant does not violate a clearly established right "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Bevill*, 103 F.4th at 379 (citing *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)) (internal quotations omitted).  The Supreme Court has instructed that this demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  For a right to be clearly established, it

11

must have a "sufficiently clear foundation in then-existing precedent" and must be "settled law" that is "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* (internal quotations omitted).  "It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

When attempting to show that a right was clearly established, the plaintiff has the burden "to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven, Mississippi*, 884 F.3d 307, 310 (5th Cir. 2018).  The inquiry "must be undertaken in light of the specific context of the particular case, not as a broad general proposition." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (brackets and ellipsis omitted). In the context of school officials, "[c]ourts do not require a case directly on point, but school officials are entitled to qualified immunity unless existing precedent placed the statutory or constitutional question beyond debate." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1008 (5th Cir.), *cert. denied*, 144 S. Ct. 348 (2023), *reh'g denied*, 144 S. Ct. 629 (2024) (internal quotations omitted and cleaned up).

Because the individual defendants raised the defense of qualified immunity in their instant motions, the burden shifts to Taylor to rebut qualified immunity.  To do so, she must identify specific precedent that shows the individual defendants' actions violated "clearly established law," and that precedent must be sufficiently clear enough "that every reasonable [school administrator] would interpret it to establish the particular rule [Taylor] seeks to apply." *Wesby*, 583 U.S. at 63. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged

*and* that defeat a qualified immunity defense *with equal specificity*."  *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (emphasis added).

Taylor fails to meet her burden to rebut the individual defendants' assertion of qualified immunity. She fails to cite a single case showing that the individual defendants violated clearly established law in either her *First Amended Complaint* (Doc. No. 13) or her *Response to Defendants' Motions to Dismiss* (Doc. No. 23).  In her *Response*, Taylor contends that "Defendant (former) Principal Amanda Clark has not demonstrated her entitlement to qualified immunity, and especially not at this juncture."  Doc. No. 23 at 11.  Taylor misunderstands the burden of proof when a qualified immunity defense is raised.  It is her burden—not Clark's—to show that Clark (or Defendants Cox, Miller, or Low) (1) violated a statutory or constitutional right and (2) that the right was clearly established at the time.  *Benfield*, 945 F.3d at 337.  Neither Taylor's *Complaint* nor her *Response* establish the clearly established element with respect to Clark.  Moreover, Taylor does not even mention Defendants Cox, Miller, or Low in discussing qualified immunity. Accordingly, Taylor fails to establish that any of the individual defendants violated clearly established law when the alleged constitutional violations occurred.

### 2.  Violation of Constitutional or Statutory Right Element

Additionally, Taylor fails to establish that the individual defendants deprived T.J. of any recognized liberty or property interest protected by the Fourteenth Amendment's Due Process Clause.  Taylor alleges both procedural and substantive due process claims against the individual defendants in her *First Amended Complaint*.  Doc. No. 13 at 7–10.  The undersigned will discuss each claim in turn.

### a. Procedural Due Process

Taylor's procedural due process claims against the individual defendants arise from T.J.'s placement in the DAEP program. Taylor contends that the individual defendants' decision to place T.J. in DAEP "violated basic constitutional guarantees of process before disciplinary action is taken against a student in public school." Doc. No. 13 at 8, ⁋ 32. More specifically, Taylor contends that Plaintiff did not receive a sufficient explanation and an opportunity to respond to the allegations against T.J., and that she and T.J. were denied access to the evidence of the alleged assault. *Id.*, ⁋⁋ 33–34. Taylor contends that the Defendants deprived T.J. of protected liberty and property interests by placing him in DAEP, which damaged his education and reputation and prevented him from participating in extracurricular activities, including playing football on the CHS football team. Doc. No. 13 at 9, ⁋ 38.

The Fourteenth Amendment provides that state actors may not deprive "any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. A procedural due process claim turns on "(1) whether there exists a liberty or property interest which has been interfered with by the State, and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient." *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 864 (5th Cir. 2022) (internal quotations omitted). "Without a cognizable interest in liberty or property, 'there is nothing subject to Due Process protections and our inquiry ends.'" *Id.* (quoting *Hampton Co. Nat. Sur., LLC v. Tunica County*, 543 F.3d 221, 225 (5th Cir. 2008)). Thus, "[t]he first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty." *McClelland*, 63 F.4th at 1014.

First, Taylor's assertion that T.J.'s placement in DAEP deprived him of protected liberty interests or deprived him of a protected property interest in education is without merit. It is well-

settled in the Fifth Circuit that a student's placement in a DAEP program does not violate any liberty or property interests protected by the Fourteenth Amendment.  *See McClelland*, 63 F.4th at 1016 (concluding that students are not deprived of a protected property or liberty interest when they are placed in alternative education programs like the DAEP); *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011) (concluding that a "student's transfer to an alternative education program does not deny access to public education and therefore does not violate a Fourteenth Amendment interest"); *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 27 (5th Cir. 1997) (concluding that a student's assignment to alternative education program did not deny the student access to public education and thus did not deprive student of any protected property rights or liberty interests); *S.N.B. v. Pearland Indep. Sch. Dist.*, 120 F. Supp. 3d 620, 628 (S.D. Tex. 2014) (dismissing federal due process claims of student who was transferred to DAEP for 30 days because the transfer did not deprive the student of a recognized liberty or property interest).

Second, Taylor's assertion that T.J.'s exclusion from the CHS football team deprived him of a property interest protected by the Fourteenth Amendment is also without merit.  Students do not possess a protected property interest in participation in extracurricular activities.  *See James*, 45 F.4th at 865 (recognizing that no protected property interest is implicated when a school denies participation in interscholastic athletics); *Doe v. Silsbee Ind. Sch. Dist.*, 402 F. App'x. 852, 854 (5th Cir. 2010) (concluding that students "do not possess a constitutionally protected interest in their participation in extracurricular activities"); *McClelland*, 63 F. 4th at 1015 (same); *A.V. v. Plano Indep. Sch. Dist.*, 585 F. Supp. 3d 881, 894 (E.D. Tex. 2022), *reconsideration denied*, No. 4:21-CV-00508, 2022 WL 1632162 (E.D. Tex. May 23, 2022) (concluding that student did not have a constitutionally protected interest in his participation in the school's football program).

15

Third, Taylor's assertion that T.J. was deprived of his property interest in his reputation is also without merit.  The Supreme Court has stated that "reputation alone, apart from some more tangible interests such as employment," cannot be either a liberty or property interest "sufficient to invoke the procedural protection of the Due Process Clause."  *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Parker v. Duffey*, 251 F. App'x 879, 883 (5th Cir. 2007) (internal quotations omitted) (finding that "there is no support for the proposition that reputation alone, apart from some more tangible interests . . . is either liberty or property by itself sufficient to invoke the procedural protection of the Due Process Clause").  Taylor has not alleged that any tangible interest connected to T.J.'s reputation has been affected by the alleged damage to T.J.'s reputation. Accordingly, Taylor has not alleged that T.J. has a property interest in his reputation that is entitled to due process protection.

In her *Response*, Taylor analogizes the facts here to the facts in *Univ. of Tex. Med. Sch. At Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995).  Doc. No. 23 at 8–9.  However, as the individual defendants point out in their *Reply*, *Than* is inapposite here.  Doc. No. 24 at 5.  While the plaintiff medical student in *Than* was expelled from medical school, here, T.J. was not expelled from CHS—he was transferred from CHS to a DAEP program.  The decision to transfer T.J. from CHS to DAEP for a temporary period does not violate an interest protected by the Fourteenth Amendment.  *See Harris*, 635 F.3d at 690.

Additionally, Taylor contends in her *Response* that T.J. has a protected property interest that arises from (1) CISD's Student Code of Conduct and Student Handbook and (2) Section 37.009(a) of the Texas Education Code, both of which establish "entitlements and expectations that [T.J.] relies upon."  Doc. No. 23 at 3–5.  Even if T.J. was deprived of certain "entitlements and expectations" under the Student Code of Conduct and Handbook and the Texas Education

Code, Taylor has pleaded in her *First Amended Complaint* that these alleged violations all pertain to T.J.'s placement in DAEP.  *See* Doc. No. 13 at 9, ¶¶ 38, 43.  As the undersigned has explained, it is well-settled that no protected property interest is implicated by T.J.'s placement in DAEP. Accordingly, these arguments are unavailing.  *See James*, 45 F.4th at 865 (stating that due process is triggered only by a student's *total exclusion* from the educational process) (emphasis added).

In sum, Taylor has not alleged that the individual defendants deprived T.J. of a cognizable interest in liberty or property by placing him in DAEP following his alleged assault of another student.   Thus, Taylor fails to establish a violation of T.J.'s procedural due process rights. Accordingly, Taylor's procedural due process claims against the individual defendants should be dismissed.

### b.  Substantive Due Process

Like her procedural due process claims, Taylor's substantive due process claims also arise from T.J.'s placement in the DAEP program.  The Fourteenth Amendment provides that state actors may not deprive "any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV, § 1.  A substantive due process claim "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotations omitted).   School districts are subject to the commands of the Fourteenth Amendment.  *A.V.*, 585 F. Supp. 3d at 896.  As with claims for procedural due process, the "first inquiry" in a substantive due process challenge is "whether the plaintiff has been deprived of a protected interest in property or liberty."  *McClelland*, 63 F.4th at 1014; *see also Conroe Creosoting Co. v. Montgomery Cnty., Tex.*, 249 F.3d 337, 341 (5th Cir. 2001) (noting that a plaintiff must first establish the existence of an interest protected by the

Fourteenth Amendment to prevail on a substantive due process claim).  "If there is no protected property interest, there is no process due."  *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020).

In support of her substantive due process claims, Taylor contends that the individual defendants' decision to "(a) find an assault on his student disciplinary record and (b) to order T.J. to DAEP was substantively indefensible based on the evidence available to Defendants at the time and was undertaken in bad faith and maliciously."  Doc. No. 13 at 9, ⁋ 43.  Additionally, Taylor alleges that "no reasonable educational administrator" could have concluded that the assault allegations warranted a DAEP assignment or assault charges brought against T.J. in the municipal court.  *Id.*  The undersigned finds that these allegations do not show that T.J. was deprived of a protected property or liberty interest because they arise from T.J.'s placement in DAEP.  As stated above, it is well-settled that students are not deprived of a protected property or liberty interest when placed into a DAEP program.  *See McClelland*, 63 F.4th at 1016.   Accordingly, Taylor's substantive due process claims against the individual defendants should be dismissed.

In sum, the undersigned finds that Taylor's allegations in her *First Amended Complaint* (Doc. No. 13) do not defeat the individual defendants' qualified immunity defense.  Taylor has the burden to identify a violation of clearly established law with citations to specific precedent and to allege sufficient facts to show a violation of T.J.'s constitutional rights.  She has done neither. Accordingly, the individual defendants are entitled to qualified immunity for all of Taylor's claims against them in their individual capacities, and all such claims should be dismissed.

### C.  Fourth Amendment Claim

Taylor vaguely mentions a Fourth Amendment claim in conclusory fashion on the first page of the *First Amended Complaint* (Doc. No. 13 at 1).  Taylor alleges no facts supporting this claim in the operative complaint, nor does she address this claim in her *Response* (Doc. No. 23).  Taylor

fails to allege sufficient facts to establish a Fourth Amendment claim, and accordingly, this claim should be dismissed against the individual defendants.

### D.  Declaratory Judgment Claim

Taylor also seeks a declaratory judgment stating that Defendants violated T.J.'s constitutional rights.  Doc. No. 13 at 1, 11.  Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  However, the Declaratory Judgment Act is a procedural device that does not create a standalone cause of action.  *Mid-Am. Supply Corp. v. Truist Bank*, 660 F. Supp. 3d 594, 601 (E.D. Tex. 2023).  The "viability of a party's request for declaratory relief is dependent on that party's ability to assert a viable substantive cause of action."  *Id.* at 601–02.  Thus, when a party's underlying causes of action fail as a matter of law, any claim for declaratory relief fails as well.  *See Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217–18 (5th Cir. 2015).

Taylor fails to allege any viable cause of action against the individual defendants under either the Fourteenth or Fourth Amendments.  Thus, because all of Taylor's federal law claims fail as a matter of law, any purported claim for declaratory relief necessarily fails as well.  Taylor's claim under the Declaratory Judgment Act should be dismissed against the individual defendants.

### E.  Conclusion on Individual Defendants' Motions to Dismiss

In sum, the undersigned finds that all of Taylor's claims against the individual defendants in their official capacities should be dismissed as redundant of her claims against CISD.  The undersigned further finds that the individual defendants are entitled to qualified immunity from all of Taylor's claims against them in their individual capacities.  Even if qualified immunity did not apply, Taylor has nonetheless failed to state a valid claim for violation of T.J.'s procedural or

substantive due process rights or Fourth Amendment rights. As a result, Taylor's claim for a declaratory judgment fails as well. Accordingly, the undersigned recommends granting Defendants Cox, Miller, and Low's *Motion to Dismiss* (Doc. No. 19) and Defendant Clark's *Motion to Dismiss* (Doc. No. 20).

## VI. <u>Defendant CISD's 12(b)(6) Motion to Dismiss</u>

### A. *Monell* Liability Claim

Taylor alleges procedural and substantive due process claims against Defendant CISD under the municipal liability doctrine set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Doc. No. 13 at 10. Taylor alleges that CISD has a "policy, practice, or custom of unconstitutional enforcement against students, placing negative findings in their disciplinary files, and placement in DAEP." *Id.*, ⁋ 47. Taylor further alleges that alternatively, "CISD ratified the illegal finding of assault (or of a student conduct violation) against T.J., and placement of T.J. in DAEP" by refusing to provide sufficient notice and opportunity to respond to the assault allegations. *Id.*, ⁋ 48. CISD also refused to change the findings in T.J.'s disciplinary file or DAEP placement despite T.J.'s "many attempts at administrative appeals within the school system." *Id.*

In its instant *Motion to Dismiss*, CISD contends that Taylor's *First Amended Complaint* fails to identify a policy adopted by the CISD Board of Trustees that gave rise to the alleged violations of T.J.'s constitutional rights. Doc. No. 18 at 18. CISD further contends that to overcome a motion to dismiss, Taylor is required to point to "factual allegations reflecting the Center ISD Board of Trustees had actual or constructive knowledge of a persistent and widespread custom." *Id.* CISD maintains that Taylor's allegations do not make such a showing, and indeed, make no reference at all to the Center ISD Board of Trustees, which is CISD's final policymaker

as a matter of law. *Id.* Thus, according to CISD, Taylor has not pleaded sufficient facts to establish a claim for municipal liability against CISD. *Id.*

42 U.S.C. § 1983 "makes liable '[e]very person' who, under color of state law, violates federal constitutional rights." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018). Municipal entities, including school districts, qualify as persons under § 1983. *Id.* A school district "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, "the school district *itself* must have caused the violation." *Littell*, 894 F.3d at 622 (emphasis in original). Thus, to hold CISD liable under § 1983, Taylor must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017). It is well-established that there must be an underlying constitutional violation to impose *Monell* liability on a municipality. *See Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012); *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (stating that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation").

As stated above, the undersigned finds that Taylor fails to establish a violation of T.J.'s constitutional rights. This failure is fatal to Taylor's *Monell* claim against CISD. Because Taylor has failed to sufficiently allege a violation of T.J.'s constitutional rights by any of the individual defendants, CISD cannot be held liable under § 1983. *See Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (concluding that "in the absence of any underlying constitutional violation, there can be no municipal liability under *Monell*"); *Hicks-Fields*, 860 F.3d at 808 (noting the well-established rule that "every *Monell* claim requires 'an underlying constitutional

21

violation'"); *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (same). Accordingly, Taylor's *Monell* claim against CISD under § 1983 should be dismissed.

### B.  Fourth Amendment Claim

As stated above, Taylor refers to a purported Fourth Amendment claim in conclusory fashion on the first page of the *First Amended Complaint* (Doc. No. 13 at 1).  In its instant motion, CISD contends that "[o]ther than the initial reference to the Fourth Amendment, Plaintiff's First Amended Complaint is devoid of any claim arising under the Fourth Amendment, much less any facts supporting such a claim," and thus, any Fourth Amendment claim should be dismissed.  The undersigned agrees and finds that Taylor fails to allege sufficient facts to establish a Fourth Amendment claim against CISD.  Accordingly, this claim should be dismissed against CISD.

### C.  Claim for Malicious Reporting of False and Inflated Criminal Charges

Taylor also vaguely alleges that "Defendants Center ISD and Officer Low also maliciously, wantonly, willfully, and/or negligently reported and pursued false and inflated criminal charges in the Center municipal court system against T.J., to the detriment of his record and career prospects." Doc. No. 13 at 11, ⁋ 50.  In her *Response*, Taylor contends that "this claim is a facet of the federal and state procedural due process claim."  Doc. No. 23 at 13. These allegations fail to state a cognizable procedural due process claim or any other claim upon which relief can be granted. Accordingly, to the extent Taylor alleges any claim at all under "Count 4" of her *Complaint*, such claims should be dismissed.

### D.  Declaratory Judgment Claim

Taylor fails to allege facts supporting any viable cause of action against CISD. Accordingly, to the extent she alleges a claim for a declaratory judgment against CISD, such claim should be dismissed.  *See Stallings*, 611 F. App'x at 217–18.

## VII.    Conclusion

The undersigned concludes that Plaintiff Tina Taylor has failed to allege sufficient facts to establish any viable cause of action against Defendants Amanda Clark, Jill Cox, Gayla Miller, and Pete Low in either their official or individual capacities.  Accordingly, Defendant Clark's *Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. No. 20) should be **GRANTED.** Additionally, Defendants Cox, Miller, and Low's *Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. No. 19) should be **GRANTED.**

The undersigned further concludes that Plaintiff Tina Taylor has failed to allege sufficient facts to establish any viable cause of action against Defendant Center Independent School District. Accordingly, Defendant CISD's *Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. No. 18) should be **GRANTED.**

## VIII.    Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2); E.D. Tex. Civ. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds

of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 25th day of July, 2024.

Zack Hawthorn
United States Magistrate Judge